Kenneth Leron
SATTERWHITE, Appellant,

v.

STATE of Texas, Appellee.

No. 11–85–113–CR.

Court of Appeals of Texas,
Eastland.

Sept. 26, 1985.

Mike VanZandt, Stephenville, for appellant.

John Terrill, Dist. Atty., Stephenville, for appellee.

OPINION

DICKENSON, Justice.

After one jury found Kenneth Leron Satterwhite competent to stand trial, a second jury convicted him of aggravated kidnap-

ping [1] and assessed his punishment at confinement for life.[2] We affirm the conviction.

## FACTS RELATING TO THE OFFENSE

The victim testified that she was working as a clerk in a convenience store at Stephenville on the night of January 10, 1985, when she was abducted at knifepoint by appellant. She testified that he was wearing a ski mask, that he blindfolded her and forced her to get into an automobile. After driving for several minutes, he parked the automobile, undressed her, and forced her into the back seat of the car and then forced her to submit to deviate sexual intercourse when he placed his mouth upon her genital area. Then he forced her to perform deviate sexual intercourse by placing her mouth on his penis. While so engaged, but before he reached a climax, she was rescued by the arrival of a deputy sheriff. The victim's testimony was supported by an eyewitness who walked into the convenience store while the abduction was taking place and who saw the knife and the ski mask. This witness called the police, and they were searching for the victim when the deputy sheriff found appellant's car in a roadside park a few miles south of town. The arresting officer found the ski mask and the knife in the car. The officer also testified that when the victim got out of the car she was hysterical and reported that appellant had been "raping" her.

## ISSUE ON APPEAL

Appellant urges on appeal that the trial court violated his constitutional rights to effective psychiatric assistance, as declared in *Ake v. Oklahoma*, 470 U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). That case was decided on February 26, 1985, after appellant's competency hearing but prior to his trial on the merits. The issue is whether the district judge denied appellant's right to effective psychiatric assistance.

## PROCEDURAL BACKGROUND

The record shows that appellant was arrested on January 10, indicted on January 16, appointed an attorney on January 17, and that the State announced ready for trial on January 28 at appellant's arraignment. Appointed counsel gave written notice on January 30 of his intention to raise the defense of insanity, and the District Judge entered an order on January 31 appointing a psychiatrist (who is in private practice and not employed by the State) to examine appellant and report to the court in writing as to appellant's sanity at the time of the offense and his competency to stand trial.

On February 6 appellant moved to dismiss his attorney and claimed his right under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to represent himself. Appellant's motion was granted after a lengthy hearing on February 11 in which appellant stated that he was 30 years old, has a tenth grade education with a G.E.D., can read and write, has "filed a few writs before," had been successful in a pro se civil suit against the Texas Department of Corrections, has had no prior treatment for mental disorders, has no kind of physical or mental disabilities, fully understood his right to have an attorney appointed, and simply does not want to have an attorney. After lengthy admonitions the District Judge made sure that the record reflected a knowing and intentional waiver of appellant's right to counsel and an insistence upon his right to self-representation under *Faretta v. California*, supra. Then the District Judge granted appellant's motion and placed the previously appointed attorney on "standby" status.

---

1. TEX.PENAL CODE ANN. sec. 20.04 (Vernon 1974) defines the offense, including the abduction of a person with the intent to abuse her sexually, and declares it to be a felony of the first degree (appellant did not voluntarily release the victim).

2. The punishment was enhanced under the habitual criminal statute, TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1985), by proof of two prior felonies (one of which was sexual abuse of a child).

The record contains two letters which the jailer intercepted which were written to appellant after the court-appointed psychiatrist found him sane at the time of the offense and competent to stand trial. The letters were from a prison inmate and they clearly reveal the strategy appellant has followed in this case. The letters were not shown to either jury, but the first letter was considered by the District Judge at pretrial hearings on February 19 and 28. Pertinent excerpts from the first lengthy letter state:

Got your letter. Man I don't know how a shrink say you ain't crazy. You sure the craziest m_____ f_____ I ever ran across. But I think I can see a light at the end of the tunnel. Remember this. On court day you stand up and tell the judge again that you want to introduce a written motion for postponement.... If all that don't get you a few more days then you are left with one alternative. Have a nervous breakdown and go to the hospital the night before trial. Get the doc to load you down with Thorazine or something by telling him you might commit suicide. Then trial day tell the judge you are too doped up to represent yourself at this time. Of course I am already claiming this in your motion for continuance....

Before I stop talking and start writing motions let me say that a motion from you don't have to be drawn up fancy. As long as you put the Heading of the State vs. you and the cause number and name of the motion. That is good enough because you are a layman and the judge has to take that into account and hear your motion....

The drugs are the main thing and if you can't get written proof from the doctor or the logbook at the jail, then affidavits from each prisoner to the effect that they have observed the jailer giving you cough syrup and valiums, how many hours and that they observe you stumbling and slurring your speech about an hour after you take the medicine.... Be

cool & let me know what happens. And get the Code of Procedure.

The second letter from the penitentiary friend to appellant is also lengthy, and excerpts from it read as shown below:

I knew those ole dumb deputies would make copies of the letters and sneak them up to the courthouse like they was Sherlock Holmes or somebody. Now they have dug a deeper hole than they can get out of. When they brought up the letters at the hearing did they mention having a warrant when they *stole* from the United States Mail? The law is they can read your mail and either return it to the sender after telling you about it, or else give it to you. It will sure look sweat (sic) on a 1983 suit later.... The only other reason was to stall the trial with paperwork.... Also that federal judge in Fort Worth is going to get tired processing cases against the same people over and over. Sooner or later he will snap that all the 1983 suits are coming from the same small town and begin to wonder what kind of circus they are running down there. So cheer up and keep building your files. We got you the continuance, didn't we.... And what does it matter really? They can screw you now or get you later. The outcome will be the same at the end.

On February 19 appellant's pro se motion to disqualify the district judge was heard by a visiting judge pursuant to TEX.CODE CRIM.PRO.ANN. art. 30.02 (Vernon 1966). After that motion was overruled, the elected district judge resumed the bench and overruled appellant's motion for continuance.

On February 20 appellant appeared in his jail clothes and refused to change into his other clothes which were made available to him. Appellant then claimed to be too ill to proceed. The docket shows that appellant "did not appear ill to Ct." but that a doctor was contacted to examine appellant. Based upon the doctor's examination, the trial court found that appellant is physically able to proceed to trial. Upon appellant's request his "stand-by" counsel was

reappointed to represent him. A jury was then impanelled which, after hearing evidence, found that appellant was competent to stand trial.

Appellant then went on a "hunger strike." A second pretrial hearing was conducted on February 28, two days after the Supreme Court of the United States decided *Ake v. Oklahoma*, supra. On that date the trial court granted appellant's motion for funds to hire a "mental health expert of his own choice" to evaluate his sanity at the time of the offense with the condition that there would be no delay of the trial setting on March 5.

On March 5 appellant's fourth motion for continuance was overruled, and the case proceeded to trial on the merits. The evidence was completed on March 6, and the jury returned its verdict that appellant was guilty of aggravated kidnapping. After additional testimony during the punishment phase of trial, the jury found that both enhancement paragraphs were true and assessed appellant's punishment at confinement for life. Sentence was pronounced on that date. Appellant gave oral notice of appeal, and the trial court appointed counsel to handle the appeal and authorized a transcript and statement of facts at no cost to appellant.

## DISCUSSION OF GROUNDS OF ERROR

■ The first ground of error argues that the trial court erred by not giving appellant a reasonable opportunity to obtain the services of a "psychiatrist of his choice" for the evaluation, preparation and presentation of the insanity defense. This ground is overruled. *Ake v. Oklahoma*, supra, does not give appellant a constitutional right to a "psychiatrist of his choice." See *Ake v. Oklahoma*, 470 U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66:

This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist ... and ... we leave to the States the decision on how to implement this right.

In this case appellant was given access to a competent psychiatrist, a medical doctor in private practice, who was appointed by the court to examine appellant and report to the court in writing as to appellant's sanity at the time of the offense and competency to stand trial. That psychiatrist found that appellant was sane at the time of the offense and that he was competent to stand trial. Moreover, we hold that appellant's sanity at the time of the offense is *not* seriously in question. See *Ake v. Oklahoma*, 470 U.S. at ——, 105 S.Ct. at 1090, 84 L.Ed.2d at 58. There is evidence to support the trial court's belief that this appellant was trying to manipulate the legal system: first claiming to be competent to represent himself and claiming his rights under *Faretta v. California*, supra; and then when his pro se motion for continuance was overruled, playing sick; and then when the doctor found that he was not too sick to stand trial, seeking a delay by invoking the rights which he sought to claim under *Ake v. Oklahoma*, supra. Consequently, we find no abuse of discretion. The courts must protect the rights of the individual, but we must not allow defendants to frustrate the legal system. *Ake v. Oklahoma*, supra, is factually distinguishable, and we think that it should not be read as granting an indigent defendant the constitutional right to a psychiatrist to present an insanity defense when there is no showing that any competent psychiatrist is of the opinion that his mental condition is seriously in question. Appellant failed to make the "threshold showing" which is required by *Ake v. Oklahoma*, 470 U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66. Psychiatrists are not in the same status as attorneys, who are officers of the court. Consequently, psychiatrists cannot be required to become advocates. All that can be required of them is that they examine the indigent, express an opinion as to his mental condition, consult with counsel and

testify as to their true belief if called as a witness.

We need not decide if Chief Justice Burger's concurring opinion is correct in stating that: "Nothing in the Court's opinion reaches non-capital cases." See *Ake v. Oklahoma*, 470 U.S. at ——, 105 S.Ct. at 1099, 84 L.Ed.2d at 68. We note that the Ninth Circuit followed *Ake* in federal criminal contempt proceedings. See *United States v. Flynt*, 756 F.2d 1352 at 1361 (9th Cir.1985).

■ Appellant claims in his second and third grounds of error that the trial court erred by overruling the third and fourth motions for continuance. These grounds are overruled because there is no showing that the trial court abused its discretion in denying these motions for continuance. As discussed above, appellant failed to make the threshold showing that his sanity was seriously in question. The independent psychiatrist appointed by the court had found that appellant was sane at the time of the offense and competent to stand trial. Appellant had no right to postpone the trial while he searched for an opinion more to his liking.

■ In his fourth ground appellant claims the trial court erred by conducting the competency hearing immediately after reappointing "stand-by counsel" to represent appellant. This ground is overruled. Counsel was originally appointed on January 17, and he was placed on "stand-by" status after appellant claimed the right to represent himself. The trial court did not err by reappointing counsel on February 20 when appellant said that he no longer wanted to represent himself. Any hardship was caused by appellant's attempt to manipulate the system by first claiming his right to represent himself and then claiming his right to the assistance of counsel.

In his fifth ground of error appellant's appointed counsel argues that appellant did not receive effective assistance of counsel. This ground is overruled. The record clearly shows that appointed counsel was exceptionally diligent and that he did in fact render effective assistance. He had

difficult facts with which to work. Since appellant was literally caught in the act, and the independent psychiatrist concluded that appellant was sane at the time of the offense and competent to stand trial, the jury's verdict was virtually inevitable.

■ Finally, appellant argues that an instructed verdict should have been granted because the indictment alleged that appellant abducted the victim *"by using and threatening to use* deadly force," and the proof shows only that he "threatened to use" deadly force. This sixth ground is overruled. There is no error in using the conjunctive ("and") in the indictment and the disjunctive ("or") in the charge. See *Zanghetti v. State*, 618 S.W.2d 383 at 387 (Tex.Cr.App.1981), and the authorities cited therein.

Appellant has filed a pro se supplemental brief. It has been examined, but it will not be discussed because appellant is not entitled to "hybrid representation." He can represent himself, or he can be represented by counsel. He is not entitled to do both. See *Rudd v. State*, 616 S.W.2d 623 at 625 (Tex.Cr.App.1981).

The judgment of the trial court is affirmed.